IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICENTE BATALON, | No. C 11-3810 YGR (PR) |
| Petitioner, | **ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; AND GRANTING CERTIFICATE OF APPEALABILITY** |
| v. | |
| KIM HOLLAND, Acting Warden, | |
| Respondent. | (Docket No. 10) |

## **INTRODUCTION**

Petitioner Vicente Batalon, an inmate at the California Correctional Institution in Tehachapi, filed a *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Pet."). Before the Court is Respondent's motion to dismiss ("MTD") the instant petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In the alternative, Respondent argues that the petition is procedurally barred by the state courts' findings that Petitioner's state petitions were untimely under state law.

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss the petition as untimely.

## **BACKGROUND**

On October 11, 2007, in the Alameda County Superior Court, Petitioner pleaded no contest to five counts of lewd acts upon a dependent adult in violation of California Penal Code § 288(c)(2). (MTD, Ex. 1; Pet., Attach. B.) The negotiated plea allowed for the dismissal of seventeen counts against Petitioner. On November 13, 2007, the state superior court sentenced him to ten years in prison for the remaining five counts. (MTD, Ex. 2; Pet., Attach. B.) Petitioner did not file a notice of appeal from his judgment, and his time for doing so expired on January 14, 2008,[1] which is sixty

---

[1] Respondent argues that the time for Petitioner to file a notice of appeal expired on January 13, 2008, which, pursuant to California Rules of Court 8.308(a), is exactly sixty days after November 13, 2007, the date of sentencing. (MTD at 2.) However, the Court takes judicial notice

days after his sentencing on November 13, 2007. *See* Cal. Rule of Court 8.308(a) (providing that appeal from criminal judgment must be filed within sixty days after rendition of judgment or making of order being appealed) (formerly Cal. Rule of Court 31).

On February 28, 2010, Petitioner filed a petition for writ of habeas corpus in Alameda County Superior Court. (MTD, Ex. 3.) The state superior court denied the petition on March 26, 2010, finding that it was untimely. (*Id.*) On May 21, 2010, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on May 28, 2010. (MTD, Ex. 4; Pet., Attach. C.)

On June 17, 2010, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (MTD, Ex. 5.) On October 15, 2010, he filed a second petition for writ of habeas corpus which the California Court of Appeal denied on October 20, 2010. (*Id.*, Ex. 6.) Finally, on February 2, 2011, the California Supreme Court denied his petition. (*Id.*, Ex. 5; Pet. Attach. C.)

Petitioner filed the present petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of California on July 19, 2011.[2] (Docket No. 1.) The petition was then transferred to this district, wherein it was filed on August 4, 2011.

On February 2, 2012, Respondent filed his motion to dismiss the petition for writ of habeas corpus as untimely and procedurally barred. (Docket No. 10.)

On February 21, 2012, Petitioner filed his opposition ("Opp'n"). (Docket No. 12.) On February 29, 2012, Respondent filed his reply to the opposition. (Docket No. 13.)

## DISCUSSION

---

that January 13, 2008 is a Sunday. Therefore, the deadline would actually be the following Monday, January 14, 2008.

[2] A *pro se* federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2001), *vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). The federal habeas petition was signed on July 19, 2011, which is the earliest date that the petition could have been delivered to prison authorities for mailing. For the purposes of this discussion, the Court deems that the petition was filed on that date.

AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1).

The one-year period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). AEDPA's one-year time limit, however, did not begin to run against any state prisoner before the date of the Act's enactment. *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitation period to commence before AEDPA's enactment would have an impermissible retroactive effect), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc).

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner, ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end. *See id.* "[W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)" and is only final at the conclusion of direct review of "the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009). However, the dismissal of a direct appeal as untimely does not constitute "the conclusion of direct review" under § 2244(d)(1)(A) where the petitioner was not first granted leave to file an out-of-time direct appeal, by which the pendency of his direct appeal was restored. *Randle v. Crawford*, 604 F.3d 1047, 1054-55, 1056 (9th Cir. 2010) (rejecting the argument that the state court's dismissal of an untimely

notice of appeal marked the beginning of the one-year limitations period because the state court never granted leave to file an untimely direct appeal, distinguishing this case from *Jimenez*, 555 U.S. at 121, where the state court granted petitioner the right to file an out-of-time appeal).

The one-year limitations period may start running from "the expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). If a petitioner could have sought review by the state court of appeals or the state supreme court, but did not, the limitation period will begin running against him the day after the date on which the time to seek such review expired. *See Smith v. Duncan*, 297 F.3d 809, 812-13 (9th Cir. 2002); *see also* Cal. Rule of Court 8.308(a).

In the present case, the limitations period started running on January 15, 2008, the day after January 14, 2008 -- when Petitioner's sentence became final. *See* § 2244(d)(1)(A); Cal. R. Ct. 8.308(a). Thus, Petitioner had one year from the time the limitations period started running -- or until January 15, 2009[3] -- to file his federal habeas petition. Because he did not file the present petition until July 19, 2011-- more than two years after the limitations period had expired -- the petition is untimely unless he can show that he is entitled to statutory or equitable tolling.

## I.     Statutory Tolling

The petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" *Dictado v. Ducharme,* 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244 (d)(2)), *abrogated on other grounds by Pace v. DiGuglielmo,* 544 U.S. 408 (2005).

As explained above, Petitioner did not file a direct appeal of his conviction. Instead,

---

[3] Respondent argues that the limitations period expired on January 13, 2009. (MTD at 3.) However, Respondent does not take into consideration that the limitations period started running one day after the deadline for Petitioner to file his notice of appeal. *See Smith*, 297 F.3d at 812-13. In addition, as mentioned before, Respondent incorrectly stated that the deadline to file an appeal fell on Sunday, January 13, 2008. Therefore, the Court calculated that deadline to be on the following Monday, January 14, 2008. Thus, if the limitations period started a day later -- on January 15, 2008 -- then it expired a year later on January 15, 2009.

Petitioner filed four state habeas petitions in 2010 -- after the January 15, 2009 expiration of the limitations period. A state habeas petition filed *before* the limitations period begins to run tolls the limitation period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). However, an application for state post-conviction or other collateral review filed *after* the limitations period has ended cannot toll the limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (Section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed, even if the state petition was timely filed). Section 2244(d)(2) cannot "revive" the limitations period once it has run (i.e., restart the clock to zero); it can only serve to pause a clock that has not yet fully run. *See Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) (once the limitations period has expired, collateral petitions can no longer serve to avoid the statute of limitations). Therefore, Petitioner is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) because the limitations period had already run. Accordingly, statutory tolling is not sufficient to overcome the time bar to Petitioner's federal habeas petition.

Because Petitioner did not meet the one-year requirement for filing the instant federal habeas petition, and he is not entitled to statutory tolling, his petition is barred as untimely under 28 U.S.C. § 2244(d)(1), unless he can show that he is entitled to equitable tolling of the limitations period.

## II.    **Equitable Tolling**

The Supreme Court has determined that AEDPA's statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling will not be available in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288. The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). Another statement of the standard is that a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his

5

rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

The Ninth Circuit has said that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Indeed, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Id.* at 1066 (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

However, "[r]ather than let procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor." *Lott v. Mueller*, 304 F.3d 918, 920 (9th Cir. 2002). When a prisoner is proceeding *pro se*, his allegations regarding diligence in filing a federal petition on time must be construed liberally. *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to file a timely federal habeas petition, the equitable tolling claim will be denied. *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *amended*, 447 F.3d 1165 (9th Cir. 2006). He must, furthermore, show that his untimeliness was caused by an external impediment and not by his own lack of diligence. *Bryant v. Arizona Attorney Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007).

### A. Indigency, Lack of Assistance from Counsel, Ignorance of the Law, and Ineffective Assistance of Trial Counsel

Petitioner first claims that English is not his first language, that he is indigent, and that he lacks a "formal education" and "familiarity with [the] American Legal System." (Pet. at 8.) Petitioner also argues that he is entitled to equitable tolling because he "fully relied upon his trial counsel" to file a notice of appeal following his conviction. (Opp'n at 7.)

As an initial matter, Petitioner has no right to counsel on state or federal habeas. *Wright v. West*, 505 U.S. 277, 293 (1992) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *Coleman*

*v. Thompson*, 501 U.S. 722, 757 (1991). Moreover, ignorance of the law and lack of legal sophistication do not alone constitute extraordinary circumstances warranting equitable tolling. *Rasberry*, 448 F.3d at 1154 (cataloguing cases from other circuits and holding that a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance); *see also Hughes v. Idaho State Bd. of Corrs.*, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of *pro se* petitioner insufficient cause to avoid procedural bar); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299-300 (5th Cir. 1998) (*pro se* status during state habeas proceedings did not justify equitable tolling); *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (*pro se* status, illiteracy, deafness and lack of legal training does not justify equitable tolling). Therefore, Petitioner is not entitled to equitable tolling based *solely* on a lack of assistance from counsel, his indigency, or his ignorance of the law.

Secondly, Petitioner has not established his own diligence in contacting his trial counsel after he was sentenced to determine whether a notice of appeal had been filed. *See Culver v. Dir. of Corr.*, 450 F. Supp. 2d 1135, 1142-43 (C.D. Cal. 2006) (finding no equitable tolling where petitioner failed to demonstrate diligence in contacting counsel to determine whether petition for review had been filed and first habeas petition was not filed until five months after the state appellate court denied his direct appeal). Because Petitioner does not offer a sufficient factual basis for his claim of equitable tolling due to his counsel's failure to file a timely notice of appeal, the Court will now consider whether further development of the record is necessary. In *Laws v. Lamarque*, the Ninth Circuit reversed the district court's order granting a motion to dismiss because it failed to develop the record in response to Law's claim of mental incompetency. 351 F.3d 919, 924 (9th Cir. 2003). The court determined that a district court should not require the petitioner to "carry a burden of persuasion" at the time he asserts equitable tolling to merit further investigation into the merits of his arguments for tolling. *Id.* Instead, Ninth Circuit cases require only that there be "circumstances consistent with [the] petitioner's petition . . . under which he would be entitled to . . . equitable tolling" to trigger further factual development of the record. *Id.* (citing *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding case to district court for development of facts concerning whether AEDPA materials were unavailable in the prison law library and the legal

7

significance of such a finding)). Should further development of the record show evidence of attorney misconduct, the a district court would then be able to evaluate the egregiousness of the conduct.

The Ninth Circuit has held that attorney misconduct may constitute an extraordinary circumstance warranting equitable tolling only where the conduct is "sufficiently egregious." *Spitsyn*, 345 F.3d at 800. In *Spitsyn*, equitable tolling was deemed warranted where the attorney was hired nearly a full year in advance of the deadline but failed to prepare and file a petition, and was contacted by the petitioner and his mother numerous times by telephone and in writing. Here, Petitioner does not allege that his trial counsel demonstrated similar "sufficiently egregious" misconduct. In fact, Petitioner only offers vague and conclusory statements regarding his trial counsel's alleged negligence and fails to assert any misconduct by his trial counsel. Petitioner does not plead enough facts to demonstrate that he was misled by his counsel to expect that an appeal would be filed or that Petitioner's inaction was in reliance of that expectation. Also, Petitioner does not claim that his counsel prevented him from accessing resources necessary to file a timely federal habeas petition. Therefore, Petitioner is not entitled to equitable tolling based on his attorney's ineffectiveness. Thus, the Court finds no need for further development of the record. Even if there was a sufficient factual basis for Petitioner's claim that his trial counsel negligently failed to file a timely direct appeal, attorney negligence is not a sufficient basis for applying equitable tolling to the section 2244(d)(1) limitations period, as further explained below. *See Holland*, 130 S. Ct. at 2564.

The Court notes that the Ninth Circuit's decision in *Randle* is instructive. In that case, the petitioner argued that he met the equitable tolling requirement because his state-appointed appellate counsel failed to perfect a timely appeal. 604 F.3d at 1057. On appeal, the court noted that "Randle does not show how his counsel's failure to file a direct appeal delayed the filing of his state habeas action." *Id.* It further explained that "[c]ounsel's failure to perfect an appeal simply meant that Randle had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action -- it did not prevent him from filing the petition." *Id.* at 1058. Therefore, the Ninth Circuit held that Randle's counsel's negligence in failing to perfect direct appeal did not

8

warrant equitable tolling because it did not cause delay in the filing of his federal petition.

Here, as in *Randle*, Petitioner is unable to show that his counsel's negligence was the direct cause of his failure to file a timely federal habeas petition. Because Petitioner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim should be denied. *See Gaston*, 417 F.3d at 1034-35 (holding that where prisoner fails to show causal connection between self-representation on direct appeal or physical and mental disabilities and inability to timely file petition, district court's finding that he was not entitled to equitable tolling where he had earlier filed a state habeas petition was not clear error). Furthermore, Petitioner fails to show that his untimeliness was caused by an external impediment, instead, it was caused by his own lack of diligence. *See Bryant*, 499 F.3d at 1061 (no equitable tolling where petitioner was not diligent in that he failed to seek any state court relief for six years, or to take advantage of available paralegal assistance). Petitioner's lack of diligence is evident from his delay in seeking any state court relief. In fact, he did not pursue state collateral review until over one year past the expiration of the limitations period. Accordingly, in the absence of a "causal connection" between his counsel's negligence and the inability to timely file his federal petition, and without a showing of reasonable diligence by Petitioner, equitable tolling is unavailable on this ground.

### B. **Lockdowns**

Petitioner claims that the limitations period should have been tolled because he "has been moved from one prison to another, and most of the time [l]ockdown [and] riots . . . prevented him from filing a timely petition." (Opp'n at 6.)

First, the Court notes that Petitioner does not plead his argument for equitable tolling based on these alleged lockdowns with any specificity. Petitioner must allege with specificity the reasons why such circumstances warrant equitable tolling. *See Helton v. Secretary for Dep't of Corr.*, 259 F.3d 1310, 1314 (11th Cir. 2001); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). He failed do so. For example, he does not mention the specific prisons he was incarcerated at and the dates when he was subjected to lockdowns or affected by riots, and he makes no mention of being prevented

from using a law library or accessing his legal files during those times.

Lockdowns on their own are a normal part of prison life and not extraordinary circumstances. *See Lewis v. Casey*, 518 U.S. 343, 361-62 (1996) (holding that prisoners on lockdown or in the Security Housing Unit may face delays in accessing the law library, but so long as the delays are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury). Here, as mentioned above, Petitioner does not support his claim that he is entitled to equitable tolling by saying these lockdowns were extraordinary. Therefore, no further development of the record is necessary.

Further, Petitioner does not plead any facts to show a causal connection between the lockdowns and his inability to file a timely federal habeas petition. In fact, Petitioner does not demonstrate that any extraordinary circumstances he faced in prison prevented him from filing a timely federal habeas petition. Even if he was subjected to extraordinary circumstances in prison, Petitioner would have to show that he still could have not filed his petition had he exerted "reasonable diligence," *Holland*, 130 S. Ct. at 2565, and that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time," *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted).

The Court finds that Petitioner's allegation regarding lockdowns and riots preventing him from filing a timely petition is conclusory. In addition, no further development of the record is warranted because he has made an unsupported claim of equitable tolling. Accordingly, equitable tolling is unavailable on this ground.

### III.   **Actual Innocence Exception**

In his petition, Petitioner claims that he is "actually innocent" and requests a "reversal of his conviction." (Pet. at 7.) Petitioner "told his Attorney that he was not guilty of the crime charged and he was forced to enter a guilty plea." (Opp'n at 2.) He says that he is illiterate and that when "he informed his Attorney that he is not guilty . . . and requested for an Ilocano interpreter, his Attorney failed and refused to provide him [one], and demanded $50,000.00" to take the case to trial. (*Id.* at

4.) Petitioner says that his counsel did not inform him that a plea of "*nolo contendere*" was in fact an admittance of guilt. (Pet., Attach. D, California Supreme Court habeas petition at 6.) While Petitioner does not raise this argument in response to the motion to dismiss, his petition raises a claim that his sentence has resulted in a fundamental miscarriage of justice, and the Court, out of an abundance of caution, will address this claim. *See Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011) (en banc) ("[A] credible showing of 'actual innocence' under *Schlup v. Delo*, 513 U.S. 298 (1995), excuses the statute of limitations period established by [AEDPA].").

Claims which challenge the constitutionality of the length of a sentence are subject to review at any time under the standard of review which allows a federal court to hear the merits of successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute a miscarriage of justice. *See Sawyer v. Whitley*, 505 U.S. 333, 330-40 (1992). Under the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. 527, 543-44 (1986). However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see, e.g., Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default). Under this exception, a petitioner may establish a procedural "gateway" permitting review of claims which otherwise would be barred from federal review if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n.32.

As mentioned above, a credible showing of "actual innocence" under *Schlup*, excuses the statute of limitations period established by AEDPA. *Lee*, 653 F.3d at 931. Under this "equitable exception," a petitioner "may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Id.* In order to pass through the *Schlup* gateway, a petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at 315 (quoting *McCleskey v.*

*Zant*, 499 U.S. 467, 494 (1991)). The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316. A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. This exacting standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).

A petitioner must support his claims "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. "By enumerating [these] categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim." *Lee*, 653 F.3d at 945-46 (Kozinski, J. concurring). A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *House*, 547 U.S. at 538 (internal quotation marks removed). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 329). The court is to "assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* In sum, a petitioner must show that it is more likely than not that "no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Stated another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him." *Lee*, 653 F.3d at 946 (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring).

Here, Petitioner's conclusory statement that he is "actually innocent" falls far short of establishing that the exception applies to him. As mentioned above, the actual innocence exception applies only if the petitioner presents evidence which creates a colorable claim of actual innocence, that is, that the petitioner is factually innocent of the charge for which he is incarcerated as opposed to legally innocent as a result of legal error. *See Schlup*, 513 U.S. at 321; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (actual innocence means factual innocence, not merely legal

insufficiency). Petitioner's conclusory claim that he is "actually innocent" is contradicted by the fact that he entered a plea. In his petition, he claims that he did so because he did not fully understand English, the law, or his constitutional right to counsel at trial. (Opp'n at 2-4.) Petitioner does not support his claims "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . ." *Schlup*, 513 U.S. at 324. There is no new evidence in his petition or opposition. In reviewing the record, the Court notes that his statement of the facts appears in an affidavit directed to a state superior court judge. (Pet., Attach. A at 1-3.) It also appears in his California Supreme Court habeas petition. (Pet., Attach. E.) Notwithstanding, Petitioner has not introduced new evidence or pleaded facts to give this Court confidence in his innocence. Petitioner in his state habeas petition filed in the Supreme Court of California made conclusory statements that he had "newly discovered evidence" and that the "state factual determination is not fairly supported by the record." (Pet., Attach. E at 16). However, Petitioner's claims that the evidence supports his actual innocence are not supported by any evidence. Accordingly, Petitioner is not entitled to review of his petition under the actual innocence exception.

In sum, Petitioner's federal habeas petition is untimely, and he has not offered the Court a sufficient reason why he should be entitled to statutory or equitable tolling. Moreover, as explained above, Petitioner's conclusory claim of "actual innocence" does not excuse his untimeliness. Accordingly, the Court GRANTS Respondent's motion to dismiss. Because the Court finds that the petition is untimely, it need not address Respondent's alternative argument that the petition is procedurally barred.

### IV. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

#### A. Legal Standard

Unless a circuit justice or judge issues a COA, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court. *See* 28 U.S.C. § 2253(c)(1)(A). Section 2253(c)(1) applies to an appeal of a final order entered on a procedural question antecedent to the merits, for instance a dismissal on statute of limitations grounds. *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

"Determining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id.* at 484-85. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000). As each of these components is a "threshold inquiry," the federal court "may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Slack*, 529 U.S. at 485. Supreme Court jurisprudence "allows and encourages" federal courts to first resolve the procedural issue. *See id.*

As to the "denial of a constitutional right" prong of the *Slack* test, the court simply takes a "quick look" at the face of the petition, taking the factual allegations as true, and determines if petitioner has "facially allege[d] the denial of a constitutional right." *Lambright v. Stewart*, 220 F.3d 1022, 1026-27 (9th Cir. 2000) (internal quotation marks omitted). All of the inferences that apply to ruling on a Rule 12(b)(6) motion apply to this situation. *See id.* If the petitioner has facially alleged the denial of a constitutional right and the procedural ruling is debatable, a COA should be granted. *See id.*

### B. Procedural Grounds for Dismissal

The Court concludes that jurists of reason could find it debatable whether Petitioner's petition

14

was untimely. As explained above, the Court has rejected Petitioner's aforementioned arguments that the limitations period must be equitably tolled or that his claim of "actual innocence" excuses his untimeliness. The Court concludes that jurists of reason could differ on whether Petitioner was entitled to the benefits of equitable tolling, or on whether the Court correctly rejected the equitable tolling argument without requiring further development of the factual record. The Court also concludes that jurists of reason might differ on whether he is entitled to review of his petition under the actual innocence exception.

Therefore, Petitioner has satisfied the first prong of the test for obtaining a COA.

### C. Substantial Showing of the Denial of a Constitutional Right

Petitioner has facially alleged the denial of constitutional rights in all of the claims asserted in his petition. He asserts the following claims: that he was denied his *Miranda*[4] right to counsel during questioning (Pet. at 10); that there was insufficient evidence to support a conviction (*id.* at 14); that he was subjected to prosecutorial misconduct (*id.* at 19); that he received ineffective assistance of counsel (*id.* at 24); and that his sentence subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights and was a miscarriage of justice because he is "actually innocent" (*id.* at 7, 14).

Because Petitioner facially alleges that his constitutional rights were violated, he has satisfied the second prong of the test for issuing a COA.

For the reasons stated above, Petitioner has shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" and he has facially alleged the denial of his constitutional rights. *Slack*, 529 U.S. at 484-85. Accordingly, a COA is GRANTED.

### CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Respondent's motion to dismiss petition for writ of habeas corpus (Docket No. 10) is GRANTED, and this action is DISMISSED with prejudice.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

15

2. The Court GRANTS a COA as to Petitioner's entire petition.

3. Kim Holland, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

4. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

5. This Order terminates Docket No. 10.

IT IS SO ORDERED.

DATED:   August 10, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

G:\PRO-SE\YGR\HC.11\Batalon3810.grantMTD.wpd        16